UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DOUGLAS R BAKER and MARIA KAY DUPUIS-BAKER, as a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>CMH HOMES, INC., a Tennessee corporation, dba CLAYTON HOMES, #742,<br><br>Defendant. | CASE NO. 19-cv-5311 RJB-JRC<br><br>ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS |

THIS MATTER comes before the Court on Defendant CMH Homes, Inc.'s ("CMH") Motion to Compel Arbitration and Stay Court Proceedings ("Motion to Compel Arbitration"). Dkt. 14. The Court has considered the motion, documents filed in support of and in opposition to the motion, and the remainder of the record herein.

For the reasons set forth below, the Court should deny Defendant's Motion to Compel Arbitration (Dkt. 14).

ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS - 1

# I. BACKGROUND

This case is an alleged breach of contract and construction dispute, including a Consumer Protection Act violation claim arising from the alleged breach. Dkt. 14, at 2. In February 2016, Plaintiffs and CMH apparently contracted for the purchase of land and a manufactured home; a sales agreement was executed on August 26, 2016.[1] Dkts. 14, at 2; 18, at 2. CMH contends that, as part of the contract sales agreement, the Parties executed a Binding Dispute Resolution Agreement ("BDRA") on March 9, 2016. Dkt. 14, at 2.

The BDRA provides, in part: "The Parties agree to mandatory, binding arbitration ('Arbitration') of all Claims that are not resolved in Mediation …. Any Party to this Agreement may commence arbitration at any time following Mediation[.]" Dkt. 14, at 3; *see generally* Dkt. 15-2. "This Agreement will survive and continue in full force and effect notwithstanding assignment, assumption, rescission, cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, unless otherwise agreed to in writing by the Parties." Dkt. 15-2, at 3.

The BDRA continues:

> NOTICE: BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT. BUYER AND SELLER FURTHER INTEND TO DIRECTLY BENEFIT AND BIND ALL BENEFICIARIES TO THIS AGREEMENT. IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR

---

[1] Plaintiffs filed a Notice of Errata correcting the sales agreement date from August 26, 2018, to August 26, 2016. Dkt. 20. In the instant Motion to Compel Arbitration, CMH wrote that the sales agreement date was August 26, 2019. Dkt. 14, at 2:10. It appears that the correct date is August 26, 2016.

ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS - 2

> PROVISIONS OF THIS AGREEMENT, INCLUDING
> ADVANTAGES OR DISADVANTAGES OF ARBITRATION,
> THEN BUYER SHOULD SEEK INDEPENDENT LEGAL
> ADVICE BEFORE SIGNING THIS AGREEMENT. THE
> PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO
> TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE
> PARTIES HAVE ENTERED INTO THIS AGREEMENT
> KNOWINGLY, WILLINGLY AND VOLUNTARILY.

Dkt. 14, at 3-4 (emphasis in original).

On March 11, 2019, Plaintiffs filed this suit in Pierce County Superior Court, and CMH removed the case to this Court. Dkt. 1.

On May 17, 2019, CMH filed the instant Motion to Compel Arbitration. Dkt. 14. CMH argues that the Court should compel arbitration of the Parties' dispute consistent with the terms of the BDRA. *See* Dkt. 14.

On June 10, 2019, Plaintiffs filed a response in opposition to CMH's instant Motion to Compel Arbitration. Dkt. 18. Plaintiffs argue that the BDRA is unenforceable for two reasons. Dkt. 18. First, the final sales agreement signed by the Parties on August 26, 2018, contained an integration clause representing the full and complete manifestation of the Parties' intent—and the sales agreement did not incorporate, reference, or otherwise include the BDRA. Dkt. 18, at 2-3. Second, the BDRA is unenforceable for lacking consideration. Dkt. 18, at 3.

Plaintiffs allege that the BDRA "was not for the purchase of the modular home but rather for financing through CMH Homes. That financing never came to fruition, as Plaintiffs elected to secure private financing." Dkt. 18, at 2 (citation omitted). Plaintiffs continue, "The Sales Agreement that is the subject of this action, which was executed [on February 21, 2017], did not include an arbitration clause; it did, however, include an integration clause[.]" Dkt. 18, at 2; *see generally* Dkt. 19. The integration clause provides: "**COMPLETE AGREEMENT.** This Sales Agreement is the complete agreement between Buyer and Seller and there are no other

ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS - 3

agreements or understandings between the parties hereto. This Sales Agreement may only be modified by written agreement of the parties hereto." Dkts. 18, at 2; and 19-1, at 3 (emphasis in original).

CMH did not file a reply in support of its Motion to Compel Arbitration.

## II. DISCUSSION

### A. WASHINGTON STATE SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

### B. ARBITRATION LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C., established a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). Creating "a body of federal substantive law of arbitrability," the FAA applies to "any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA applies to any "written provision in … a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Pursuant to the FAA, arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Courts must indulge every presumption 'in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301 (2004) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25). "The party opposing arbitration bears the burden of showing that the agreement is not enforceable." *Id.* at 302.

"Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (emphasis in the original) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130. If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss it. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

### C. EXISTENCE OF AGREEMENT TO ARBITRATE

In assessing whether an arbitration agreement or clause is enforceable, the Court should apply ordinary state-law principles that govern the formation of contracts. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217–18 (9th Cir. 2008). Accordingly, the Court will apply Washington law.

Washington follows the objective manifestation theory of contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005). "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Id.* "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Contracts are viewed as a whole; particular language is interpreted in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 669–70 (2000).

"If the writing is a complete integration, any terms and agreements that are not contained in it are disregarded." *Lopez v. Reynoso,* 129 Wn. App. 165, 171 (2005) (internal citations omitted). "While boilerplate integration clauses can provide strong evidence of integration, they are not operative if they are premised on incorrect statements of fact." *S.D. Deacon Corp. of Washington v. Gaston Bros Excavating, Inc.* 150 Wn. App. 87, 93 (2003) (internal citations omitted). "A court may consider evidence of negotiations and circumstances surrounding the formation of the contract, and if the agreement is not completely integrated, additional terms may be proved to the extent they are consistent with the written terms." *Id.*

### D. ABRITRATION ANALYSIS

Pursuant to the FAA, the Court's analysis is limited to "'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *See Cox*, 533 F.3d at 1119 (9th Cir. 2008).

It appears that there is not a valid agreement to arbitrate here. Although the Parties signed the BDRA, dated March 9, 2016, which clearly provides arbitration agreement terms (see Dkt. 15-2), the final sales agreement ("Sales Agreement"), dated February 21, 2017, contained an integration clause revoking all prior agreements of the parties. *See* Dkt. 19-1. The Sales Agreement's integration clause provides: "This Sales Agreement is the complete agreement between Buyer and Seller and *there are no other agreements or understandings between the parties hereto*. This Sales Agreement may only be modified by written agreement of the parties hereto." Dkts. 18, at 2; and 19-1 (emphasis added). The Sales Agreement apparently contained no agreement to arbitrate. *See* Dkt. 18.

The Sales Agreement appears to have revoked the BDRA and its terms. The BDRA provides: "This Agreement will survive and continue in full force and effect notwithstanding

assignment, assumption, rescission, cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, *unless otherwise agreed to in writing by the Parties*." Dkt. 15-2, at 3 (emphasis added). The written, signed February 21, 2017 Sales Agreement provides that "there are no other agreements or understandings between the parties hereto." Dkt. 19-1.

Plaintiffs contend that "[t]he parties clearly did not intend to adopt the BDRA into the actual Sales Agreement because (1) the subject matter was different, [the former agreement was for financing the purchase,] and (2) the Sales Agreement did *not* include any provisions concerning dispute resolution." Dkt. 18, at 4 (emphasis in original).

CMH filled no reply in support of its instant Motion to Compel Arbitration. CMH has provided nothing showing that the terms of the BDRA are consistent with the unambiguous, written terms of the Sales Agreement, which appear to have revoked the BDRA.

Notwithstanding liberal federal policy favoring enforcement of arbitration agreements, there does not appear to be a valid, enforceable arbitration agreement here. Therefore, the Court should deny CMH's Motion to Compel Arbitration.

Because the Court will rule that there is no valid arbitration agreement and the Court will deny CMH's Motion to Compel Arbitration, the Court declines to discuss Plaintiffs' secondary argument that the BDRA is unenforceable for lacking consideration and mutuality.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- CMH Homes, Inc.'s Motion to Compel and Stay Proceedings (Dkt. 14) is **DENIED;** and

- This case remains referred to United States Magistrate Judge J. Richard Creatura pursuant to the Minute Order Reassigning Case (Dkt. 9).

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 1st day of July, 2019.

ROBERT J. BRYAN
United States District Judge