1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DOUGLAS R BAKER and MARIA KAY DUPUIS-BAKER, as a married couple,<br><br>                  Plaintiffs,<br><br>     v.<br><br>CMH HOMES, INC., a Tennessee corporation, dba CLAYTON HOMES, #742,<br><br>                 Defendant. | CASE NO. 19-cv-5311 RJB-JRC<br><br>ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION |

THIS MATTER comes before the Court on Defendant CMH Homes, Inc.'s ("CMH") Motion to Alter, Vacate or Amend Pursuant to FRCP 59(e) or Alternative Motion Pursuant to CR 60(b) ("Motion to Alter") (Dkt. 24). The Court has considered the motions, documents filed in support of and in opposition to the motions, and the remainder of the record herein, and it is fully advised.

For the reasons set forth below, the Court should grant, in part, and deny, in part, CMH's Motion to Alter (Dkt. 24). The Court should vacate the Order Denying CMH's Motion to

Compel (Dkt. 21) and replace it with this order. And the Court should deny CMH's Motion to Compel (Dkt. 14).

## I.   BACKGROUND & PROCEDURAL HISTORY

### A.  Background

This case is an alleged breach of contract and construction dispute, including a Consumer Protection Act violation claim, arising from the alleged breach of contract. Dkt. 14, at 2. In February 2016, Plaintiffs and CMH apparently contracted for the purchase of land and a manufactured home; a preliminary sales agreement was executed on August 26, 2016.[1] Dkts. 14, at 2; 18, at 2. A final sales agreement ("Sales Agreement") was signed on February 21, 2017. Dkts. 25; and 25-1. CMH contends that the Parties executed a Binding Dispute Resolution Agreement ("BDRA") as part of the sale, on or about March 9, 2016, and that the Court should compel the Parties to seek arbitration dispute resolution consistent with the BDRA. Dkts. 14, at 2; 24; 27; and 31. Plaintiffs argue that the BDRA is unenforceable, having been superseded and replaced by the Sales Agreement, being unconscionable, and lacking consideration and mutuality. Dkts. 18; 26; and 29.

### B.  Procedural History

On July 1, 2019, in the Order on Defendant's Motion to Compel Arbitration and Stay Proceedings ("Order"), the Court denied CMH's Motion to Compel Arbitration. Dkt. 21. The Court ruled that the February 21, 2017 Sales Agreement superseded and revoked the BDRA. Dkt. 21. The Court concluded that, "[n]otwithstanding liberal federal policy favoring enforcement of arbitration agreements, there does not appear to be a valid, enforceable

---

[1] Plaintiffs filed a Notice of Errata correcting the sales agreement date from August 26, 2018, to August 26, 2016. Dkt. 20. In the instant Motion to Compel Arbitration, CMH wrote that the sales agreement date was August 26, 2019. Dkt. 14, at 2:10. It appears that the correct date is August 26, 2016.

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION - 2

1    arbitration agreement here." Dkt. 21, at 7. Because the Court found that there was no valid,

2    enforceable arbitration agreement, the Court declined to discuss Plaintiffs' secondary argument

3    that the BDRA is unenforceable for lacking consideration and mutuality. Dkt. 21, at 7.

4         On July 15, 2019, CMH filed the instant Motion to Alter. Dkt. 24. CMH moved to alter,

5    vacate, or amend the Order (Dkt. 21) for two reasons: (1) CMH alleged the Court did not

6    recognize the scope of the language of the BDRA, and (2) the Court improperly relied upon the

7    unsigned and unsworn declaration of Maria Kay Dupuis-Baker in issuing the Order. Dkt. 24.

8         Plaintiffs responded in opposition to the instant Motion to Alter. Dkt. 26. Plaintiffs'

9    response made, in part, two arguments: (1) CMH's Rule 59(e) or 60(b) Motion to Alter was

10   incorrectly filed and should have been filed as a motion for reconsideration governed by LCR

11   7(h); and (2) CMH has not shown manifest error or new facts or authority sufficient to grant a

12   motion for reconsideration. Dkt. 26.

13        CMH replied in support of the instant Motion to Alter. Dkt. 27.

14        The Court granted, in part, and denied, in part, and otherwise renoted to September 4,

15   2019, CMH's instant Motion to Alter. Dkt. 28. The Court amended the Order (Dkt. 21) to cite to

16   the Notice of Errata's signed, sworn declaration (Dkts. 25, at 25-1) and concluded that the

17   Order's reliance on the unsigned, unsworn declaration (Dkts. 19; and 19-1) was harmless. Dkt.

18   28. The Court granted Plaintiffs leave to file an additional response and granted CMH leave to

19   file a reply. Dkt. 28.

20        Plaintiffs filed a Supplemental Response Supporting Opposition to Defendant's Motion

21   to Compel ("Supplemental Response"). Dkt. 29. Plaintiffs maintains that "the BDRA is

22   unenforceable (1) for lack of consideration and mutuality of obligation, and (2) because it was

23   not made a part of the Sales Agreement which clearly contained an integration clause

24

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR
ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION - 3

1   establishing the final manifestation of the contract between the parties." Dkt. 29, at 1. Plaintiffs

2   add that the BDRA should be stricken as unconscionable. Dkt. 29, at 7.

3          CMH filed a Reply in Support of Motion to Stay Proceedings and Compel

4   Arbitration/Motion to Amend ("Reply"). Dkt. 31. CMH maintains that the "BDRA is

5   enforceable and binding, and these proceedings should be stayed while the parties pursue

6   resolution of their dispute via binding private arbitration as contracted." Dkt. 31, at 1. CMH

7   argues that Plaintiffs never raised unconscionability as a defense to arbitration in response to

8   CMH's Motion to Compel, and it was therefore waived. Dkt. 31, at 8. CMH further argues that

9   Plaintiffs' unconscionability argument is without merit. Dkt. 31, at 8.

10         Plaintiffs filed a Notice of Intent to File Surreply (Dkt. 32), and filed a Surreply (Dkt. 33)

11   requesting that the Court strike or disregard two statements in made by CMH in its Reply.

12   Plaintiffs argue that CMH (1) made an unsupported representation in its reply, and (2) introduced

13   a declaration lacking personal knowledge. Dkt. 33. CMH filed a Motion to Strike Surreply and

14   Motion for Leave to Supplement Reply on Defendant's Motion to Compel Arbitration/Motion to

15   Amend (Dkt. 34) not in compliance with LCR 7(g)(4), which the Court need not consider.

## II.   DISCUSSION

17         The Court has the power to reconsider, revise, alter, or amend the Order for cause. *See*

18   Fed. R. Civ. P. 60; *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper,* 254 F.3d 882,

19   886-87 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir. 1981))

20   (citing, e.g., *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1315 (11th Cir. 2000) (stating

21   that when a district court issues "an interlocutory order, the district court has plenary power over

22   it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the

23   limitations of Rule 59")); *see also* LCR 7(h); *see generally* Dkt. 28. In light of the additional

24

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR
ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION - 4

1  briefing from the Parties regarding enforcement of the BDRA and the need for further

2  consideration, the Court should vacate the Order Denying CMH's Motion to Compel (Dkt. 21)

3  and replace it with this order.

4  **A.  WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

5  Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in

6  diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center*

7  *for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

8  **B.  ARBITRATION LEGAL STANDARDS**

9  The Federal Arbitration Act ("FAA"), 9 U.S.C., established a "liberal federal policy

10  favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). Creating

11  "a body of federal substantive law of arbitrability," the FAA applies to "any arbitration

12  agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

13  *Corp.*, 460 U.S. 1, 24 (1983). The FAA applies to any "written provision in … a contract

14  evidencing a transaction involving commerce." 9 U.S.C. § 2. Pursuant to the FAA, arbitration

15  agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in

16  equity for the revocation of any contract." 9 U.S.C. § 2.

17  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

18  arbitration, whether the problem at hand is the construction of the contract language itself or an

19  allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460

20  U.S. at 24–25 (1983). "Courts must indulge every presumption 'in favor of arbitration, whether

21  the problem at hand is the construction of the contract language itself or an allegation of waiver,

22  delay, or a like defense to arbitrability.'" *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301

23

24

1    (2004) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25). "The party opposing arbitration

2    bears the burden of showing that the agreement is not enforceable." *Id.* at 302.

3           "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to

4    arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits

5    courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it

6    does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel*

7    *Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (emphasis in the original) (quoting *Chiron Corp. v.*

8    *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative

9    on both counts, then the Act requires the court to enforce the arbitration agreement in accordance

10   with its terms." *Chiron Corp.*, 207 F.3d at 1130. If the court determines the matter is subject to

11   arbitration, it may either stay the matter pending arbitration or dismiss it. *EEOC v. Waffle House,*

12   *Inc.*, 534 U.S. 279, 289 (2002).

13          In assessing whether an arbitration agreement or clause is enforceable, the Court should

14   apply ordinary state-law principles that govern the formation of contracts. *Lowden v. T-Mobile*

15   *USA, Inc.*, 512 F.3d 1213, 1217–18 (9th Cir. 2008). Accordingly, the Court will apply

16   Washington law.

17          Washington follows the objective manifestation theory of contracts. *Hearst Commc'ns,*

18   *Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005). "Under this approach, we attempt to

19   determine the parties' intent by focusing on the objective manifestations of the agreement, rather

20   than on the unexpressed subjective intent of the parties." *Id.* "We generally give words in a

21   contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly

22   demonstrates a contrary intent." *Id.* Contracts are viewed as a whole; particular language is

23

24

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR
ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION - 6

interpreted in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 669–70 (2000).

"If the writing is a complete integration, any terms and agreements that are not contained in it are disregarded." *Lopez v. Reynoso,* 129 Wn. App. 165, 171 (2005) (internal citations omitted). "While boilerplate integration clauses can provide strong evidence of integration, they are not operative if they are premised on incorrect statements of fact." *S.D. Deacon Corp. of Washington v. Gaston Bros Excavating, Inc.* 150 Wn. App. 87, 93 (2003) (internal citations omitted). "A court may consider evidence of negotiations and circumstances surrounding the formation of the contract, and if the agreement is not completely integrated, additional terms may be proved to the extent they are consistent with the written terms." *Id.*

## C.  ABRITRATION AGREEMENT ANALYSIS

Plaintiffs make three primary arguments against the existence of a valid agreement to arbitrate, discussed below. First, the Court discusses whether the Sales Agreement superseded and revoked the BDRA. Second, whether the BDRA lacks consideration and mutuality of obligation. Finally, whether the BDRA is unconscionable.

### 1.  Whether the Sales Agreement superseded and revoked the BDRA

The BDRA, dated on or around March 9, 2016, provides, in part: "The Parties agree to mandatory, binding arbitration ('Arbitration') of all Claims that are not resolved in Mediation …. Any Party to this Agreement may commence arbitration at any time following Mediation[.]" Dkt. 14, at 3; Dkt. 15-2, at 1–2, ¶ ¶D–E.

Paragraphs M and N of the BDRA provide:

> **M. Survival of Agreement:** This Agreement will survive and continue in full force and effect notwithstanding assignment, assumption, rescission, cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION - 7

conclusion of the Contract or any other contract or transaction between the Parties *, unless otherwise agreed to in writing by the Parties.*

N. **Rules of Construction:** *If there is a disagreement on the interpretation of this Agreement, this Agreement shall be construed to require Mediation and Arbitration ….* The Parties waive the rule of construction that requires a tribunal to construe a vague or ambiguous provision against the drafting party. This Agreement is the only agreement between the Parties regarding dispute resolution, and takes the place of and supersedes any other dispute resolution agreements to the extent they are inconsistent with this Agreement.

Dkt. 15-2, at 3, ¶ ¶ M–N (emphasis added).

The final Sales Agreement dated February 21, 2017, contained an integration clause revoking all prior agreements of the parties. *See* Dkts. 25; and 25-1. The Sales Agreement provides: "there are no other agreements, written or verbal, unless evidence in writing and signed by the parties." Dkt. 25-1, at 7. The Sales Agreement's integration clause provides: "This Sales Agreement is the complete agreement between Buyer and Seller and *there are no other agreements or understandings between the parties hereto*. This Sales Agreement may only be modified by written agreement of the parties hereto." Dkts. 18, at 2; 25; and 25-1. (emphasis added).

The effect of the BDRA is unclear in light of the Sales Agreement. The clear language of the BDRA's survival clause and rules of construction clause, evidenced in writing and signed by the Parties, suggests that the BDRA's terms are binding notwithstanding the Parties entering into the Sales Agreement. *See* Dkt. 15-2, at 3, ¶ M. On the other hand, the Sales Agreement's integration clause suggests that there are no other agreements or understandings between the parties, including the BDRA. *See* Dkts. 18, at 2; 25; and 25-1. (emphasis added).

1    Because it is unclear whether the Sales Agreement supersedes and revokes the BDRA,

2    the Court should resolve the ambiguity in favor of arbitration. *See Moses H. Cone Mem'l Hosp*.,

3    460 U.S. at 24–25 (1983). Therefore, the Court concludes that the Sales Agreement did not

4    supersede and revoke the BDRA.

5    **2.   Whether the BDRA Lacks Consideration and Mutuality of Obligation**

6    "Washington courts have long held that mutuality of obligation means both parties are

7    bound to perform the contract's terms—not that both parties have identical requirements." *Zuver*

8    *v. Airtouch Commc'ns, Inc*., 153 Wn.2d 293, 317 (2004) (citing *Metro. Park Dist. of Tacoma v.*

9    *Griffith*, 106 Wash.2d 425, 434, 723 P.2d 1093 (1986) ("A supposed promise is illusory when its

10   provisions make its performance optional or discretionary on the part of the claimed promisor.")

11   (citing *Wharf Rest., Inc. v. Port of Seattle*, 24 Wn. App. 601, 609, 605 P.2d 334 (1979)).

12   Plaintiffs argue that (1) the CMH financing never came to fruition, therefore, the BDRA

13   lacks consideration; and (2) the BDRA lacks mutuality. First, CMH denies that it ever offered

14   Plaintiffs a loan. Dkt. 31, at 7–8. But it appears that the consideration contemplated between the

15   Parties by the BDRA was their mutual obligation to resolve all disputes pursuant to the terms of

16   the BDRA. Moreover, the Sales Agreement, as well as the preliminary sales agreement, shows

17   the home's sales price and refers to CMH as Seller and Plaintiffs as Buyer, which suggests that

18   the home was consideration offered as part of the Sale Agreement contract. Therefore, the Court

19   need not discuss whether CMH offered Plaintiffs a loan that never came to be.

20   Second, CMH denies that the BDRA creates an agreement whereby only one party is

21   bound. *E.g*., Dkt. 31, at 5–8. But the language of the BDRA is conflicting. The BDRA's

22   introduction provides: "The Parties (defined below) agree to resolve all disputes pursuant to the

23   terms of this Binding Dispute Resolution Agreement (the "Agreement")." Dkt. 15-2, at 1.

24

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR
ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION - 9

Additionally, Paragraph D provides, in part: "<u>Agreement to Arbitrate:</u> The Parties agree to mandatory, binding arbitration ("Arbitration") of all Claims that are not resolved in Mediation." Dkt. 15-2, at 1, ¶ D.

Paragraph A appears to sharply limit the scope of the BDRA: "<u>Scope of the Agreement:</u> This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action *against Seller*[.]" Dkt. 15-2, at 1, ¶ A (italics added).

CMH argues that, under the "doctrine of the last antecedent," the scope of the BDRA unambiguously "includes all disputes between [Plaintiffs] and CMH, regardless of who is asserting a claim." Dkt. 31, at 6 (citing, e.g., *Am. Fed'n of Gov't Employees, AFL-CIO Local 2152 v. Principi*, 464 F.3d 1049, 1055 (9th Cir. 2006) ("Under the doctrine of the last antecedent, qualifying phrases are to be applied to the words or phrase immediately preceding the qualifier and are not to be construed as modifying remote phrases.")). CMH continues, "According to [Plaintiffs], the phrase 'against Seller' should be read to modify 'disputes, claims, controversies, grievances, and causes of action.' But, that violates the rule of the last antecedent." Dkt. 31, at 6.

CMH's doctrine of the last antecedent argument is unpersuasive and defies a plain language reading of the Scope of the Agreement. Nevertheless, Plaintiffs have not shown that the Parties are not mutually bound by the terms of the BDRA. But Plaintiffs have shown that the terms of the BDRA are overly one-sided; this is more appropriately addressed regarding unconscionability, discussed below.

Therefore, Plaintiffs have not shown that the BDRA lacked consideration or mutuality.

### 3. Whether the BDRA is unconscionable

CMH argues that Plaintiffs waived the defense of unconscionability by failing to raise it in response to CMH's Motion to Compel. Dkt. 31, at 8. CMH cites to no authority in support of

this argument. Dkt. 31 at 8–9. In the interest of fully and fairly considering the issues, the Court

should consider the defense of unconscionability on the merits.

The rules guiding the Court's discussion of unconscionability were laid out well in *Luna:*

> Under Washington law, whether a contract is unconscionable is a
> question of law. *Nelson v. McGoldrick,* 127 Wash.2d 124, 131, 896
> P.2d 1258 (1995). Washington courts recognize two forms of
> unconscionability: "(1) substantive unconscionability, involving
> those cases where a clause or term in the contract is alleged to be
> one-sided or overly harsh and (2) procedural unconscionability,
> relating to impropriety during the process of forming a contract."
> *Id.* (quoting *Schroeder v. Fageol Motors, Inc.,* 86 Wash.2d 256,
> 260, 544 P.2d 20 (1975)) (internal quotations omitted). The burden
> of proving that a contract is unconscionable rests with the party
> attacking the contract. *Tjart,* 107 Wash.App. at 898, 28 P.3d 823
> (2001).

*Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002).

"Under Washington law, a contract may be invalidated on procedural unconscionability

or substantive unconscionability grounds." *Luna*, 236 F. Supp. 2d at 1174 (citing *Tjart v. Smith

Barney, Inc.,* 107 Wn. App. 885, 898, 28 P.3d 823 (2001).

Plaintiffs allege that the Contract is substantively unconscionable but do not discuss

procedural unconscionability. Therefore, the Court limits its discussion to substantive

unconscionability.

> "Substantive unconscionability involves those cases where a clause
> or term in the contract is alleged to be one-sided or overly harsh."
> *Luna v. Household Fin. Corp. III,* 236 F. Supp. 2d 1166, 1177
> (W.D. Wash. 2002) (citing *McGoldrick,* 127 Wash.2d at 131
> (quoting *Schroeder,* 86 Wash.2d at 260, 544 P.2d 20)). "'Shocking
> to the conscience,' 'monstrously harsh' and 'exceedingly
> calloused' are terms sometimes used to define substantive
> unconscionability." *Id.* (quoting *Montgomery Ward & Co. v.
> Annuity Bd. of S. Baptist Convention,* 16 Wash.App. 439, 444, 556
> P.2d 552 (1976)).

*Luna*, 236 F. Supp. 2d at 1177.

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR
ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION - 11

Plaintiffs argue that the BDRA terms are substantively unconscionable for three primary reasons: reserving the right to pursue judicial remedies to the seller only; requiring the arbitration to be confidential; and requiring the consumer to share in substantial arbitration costs and fees. CMH argues that, even if portions of the BDRA are found unconscionable, the appropriate remedy is to strike that offending portion and preserve the BDRA's essential term of arbitration. *See* Dkt. 31, at 11.

### a.   *Reserving the right to pursue judicial remedies to the seller only*

The BDRA contains terms preserving CMH's right to pursue judicial remedies:

> <u>Exceptions:</u> Notwithstanding any other provision of this Agreement, the Parties agree the Seller may use judicial process (filing a lawsuit): (a) to obtain possession of the Home where Seller has not been paid in full as agreed under the Contract or to otherwise enforce Seller's ownership interest in the Home, or enforce any related mortgage or deed of trust in Seller's Name, and (b) to seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence, location, condition, or productive use of the Home or other property. Notwithstanding the Rules, the Parties also expressly agree that this Arbitration Agreement does not apply to any Claims where the amount in controversy is less than the jurisdictional limit of the small claims court in the jurisdiction where Buyer resides*, **provided, however,** that the Parties agree that any such small claims Claim may only be brought on an individual basis and not as a class action. Bringing a court proceeding described in this section "K.", however, shall not be a waiver of any Party's right to compel Arbitration of any other Claims, including Buyer's counterclaim(s) in a suit brought by Seller.

Dkt. 15-2 at 3, ¶ K (emphasis in original).

Plaintiffs argue that they are required to arbitrate any and all claims under the BDRA, whereas CMH has expressly reserved the right to bring claims in court. Dkt. 29, at 6–7. In *Luna,* the court held that an arbitration agreement weighs in favor of a finding of unconscionability

1   when it preserves judicial remedies "for only the context in which [the seller] is likely to bring a

2   claim against borrowers—foreclosure." *Luna*, 236 F. Supp. 2d at 1180.

3        CMH argues that the "judicial carveout" of Paragraph K is not unconscionable because it

4   is a logical, indispensable protection for all parties because "arbitrator[s] do not have the

5   authority to attach property." Dkt. 31, at 9. CMH briefly discusses a Supreme Court of New

6   Jersey case regarding foreclosure as an excluded term of an arbitration agreement. Dkt. 31, at 9–

7   10 (citing *Delta Funding Corp. v. Harris*, 189 N.J. 28, 47, 912 A.2d 104, 115 (2006) ("The

8   arbitration agreement excludes any foreclosure actions that may be brought against Harris. Thus,

9   foreclosure must proceed in court pursuant to the arbitration agreement. Indeed, that is hardly

10  surprising in that the foreclosure of mortgages is a uniquely judicial process.") But CMH does

11  not discuss whether this judicial remedy is likely to benefit only CMH, or why other judicial

12  remedies are unavailable under the BDRA. Furthermore, the "judicial carveout" here goes well

13  beyond foreclosure.

14        CMH does not discuss BDRA terms appearing to provide CMH with judicial remedies

15  beyond foreclosure: "the Parties agrees [*sic*] that Seller may use judicial process (filing lawsuit):

16  (a) to … enforce any related mortgage or deed of trust in Seller's name, and (b) to seek

17  preliminary relief, such as a restraining order or injunctive relief, in order to preserve the

18  existence, location, condition, or productive use of the Home or other Property." Dkt. 15-2, at 3,

19  ¶ K. The Court further observes that the scope of the BDRA (appearing limited to claims *against*

20  *Seller*), discussed above in § II(C)(2), may also allow CMH to one-sidedly seek judicial remedies

21  against Plaintiffs.

22        Therefore, the Court concludes that the BDRA's reservation of the right to pursue judicial

23  remedies to only CMH weighs in favor of a finding of substantive unconscionability.

24

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR
ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION - 13

1

*b.   Requiring the arbitration to be confidential*

2

The BDRA contains terms regarding confidentiality:

3

> The Parties agree that information exchanged in the Arbitration
> shall be held confidentially, and shall not be used in other

4

> arbitrations or court proceedings. Except as may be required by
> law, neither a Party, nor an Arbitrator may disclose the existence,

5

> content or results of any arbitration hereunder without the prior
> written consent of all Parties.

6

Dkt. 15-2, at 2, ¶ E.

7

Plaintiffs argue that CMH, by including a confidentiality agreement in the BDRA,

8

"retains the unique knowledge of all arbitrations before this one, which places the Plaintiffs at a

9

disadvantage." Plaintiffs cite to two cases in support, *Zuver* and *Luna*.

10

In *Zuver,* the Washington Supreme Court discussed an arbitration agreement in an

11

employment discrimination claim and held that its "[confidentiality] provision hampers an

12

employee's ability to prove a pattern of discrimination or to take advantage of findings of past

13

arbitrations [and was T]herefore, … substantively unconscionable." *Zuver v. Airtouch*

14

*Commc'ns, Inc.*, 153 Wn.2d 293, 315 (2004). CMH argues that *Zuver* is distinguishable because

15

it is does not relate to a consumer dispute in a commercial context.

16

In *Luna,* the court discussed an arbitration agreement "provid[ing] that any arbitration

17

'award shall be kept confidential.'" *Luna*, 236 F. Supp. 2d at 1180. The court considered caselaw

18

regarding confidentiality clauses in arbitration agreements. *Id.* at 1181 (citing *Acorn v.*

19

*Household Int'l, Inc.*, 211 F.Supp.2d 1160 (N.D. Cal. 2002) ("By keeping all awards

20

confidential, any advantages that inure to Defendants as repeat participants are effectively

21

concealed, thereby preventing the scrutiny critical to mitigating those advantages."). The court

22

held that the confidentiality agreement, "although facially neutral, … unduly favors [Defendant]

23

and therefore contributes to a finding of substantive unconscionability." *Id.*

24

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR
ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION - 14

The Court agrees with Plaintiffs that the confidentiality agreement of the BDRA, requiring that arbitration results be kept confidential except by prior written consent of the Parties, although facially neutral, unduly favors CMH and weighs in favor of a finding of substantive unconscionability.

    *c.   Requiring the consumer to share in substantial arbitration costs and fees*

The BDRA provides terms regarding arbitration fees:

<u>Fees and Costs:</u> The fees and costs imposed by the Arbitration Administrator associated with the Arbitration, including the Arbitrator's fees, shall be paid in accordance with the Rules and this Agreement. Buyer and Beneficiaries may request that the Arbitration Administrator reduce or waive Buyer's and Beneficiaries' fees, or that Seller voluntarily pay an additional share of the fees and costs (however, such request does not obligate Seller to do so), based upon Buyer's and Beneficiaries' financial circumstances or the nature of such Claim. Unless inconsistent with applicable law of the Rules, the Parties will pay for their own arbitration costs (including fees and/or expenses of their own attorneys, experts, and witnesses), regardless of which party prevails in the arbitration.

Dkt. 15-2, at 2, ¶ F.

Plaintiffs argue and have shown evidence that arbitration could cost Plaintiffs approximately $24,200. Dkt. 29, at 8. CMH disagrees, arguing that Plaintiffs' estimated cost is overblown. Moreover, CMH argues that Plaintiffs' argument fails because it does "show that the provision is unfair based on the particular circumstances of the parties to the arbitration agreement[.]" Dkt. 31, at 11.

Washington law regarding the substantive unconscionability of fee-splitting provisions requires the proponent to produce particularized evidence showing that it could not afford fees in the arbitration. *See Zuver,* 153 Wn.2d at 309–310 (2004) (citing, e.g., *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 268–69 (3d Cir.2003) (holding that plaintiff must produce evidence showing an inability to pay and information regarding arbitration costs)).

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION - 15

1    Plaintiffs have shown information regarding estimated arbitration costs, but they have not

2    shown particularized evidence of their inability to pay. Therefore, at this time, the fee-splitting

3    terms of the BDRA do not weigh in favor of a finding of substantive unconscionability.

4    *d.  Severability*

5    Plaintiffs briefly argue that severability of the BDRA's tainted clauses is impossible and

6    impracticable. Dkt. 29, at 9–10. CMH argues that the court should preserve the BDRA's

7    essential term of arbitration. Dkt. 31, at 11.

8    In *Luna,* where the arbitration agreement was tainted with, in part, one-sided judicial

9    carveouts and confidentiality agreements, as well as possible unconscionable fee-splitting terms,

10   the court wrote:

11               An unlawful provision may taint an entire agreement, making
                 judicial reformation inappropriate. *See Graham Oil Co. v. ARCO*
12               *Prods. Co.,* 43 F.3d 1244, 1249 (9th Cir. 1994). Here the
                 unconscionable provisions are interrelated and each serves to
13               magnify the one-sidedness of the others. As such the Arbitration
                 Rider is tainted with illegality. Therefore the Court finds that
14               severance of the offending provisions is inappropriate and that the
                 Arbitration Rider is unenforceable.
15
     *Luna*, 236 F. Supp. 2d at 1183.
16
17   The unconscionable terms of the BDRA, namely the reservation of judicial remedies to

18   the seller only and the confidentiality clauses, renders the BDRA and unenforceable and not

19   severable. Although the confidentiality clause, alone, may be severable, severance of the

     reservation of judicial remedies is impracticable.
20
21   *e.  Conclusion*

22   The unconscionable terms of the BDRA are not severable and the BDRA is

23   unenforceable. Therefore, CMH's Motion to Alter (Dkt. 24) should be granted, in part, and

24

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR
ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION - 16

1  denied, in part, as follows: the Order (Dkt. 21) should be vacated and replaced with this order;

2  CMH's Motion to Alter (Dkt. 24) is otherwise denied.

3      **D.  SURREPLY**

4      Plaintiffs filed a Surreply to Strike New Evidence in Defendant's Reply in Support of its

5  Motion to Stay Proceedings and Compel Arbitration/Motion to Amend ("Surreply"). Dkt. 33.

6  The Surreply requests, first, that the Court strike CMH's statement that "CMH is not a lender."

7  Dkt. 33, at 2 (quoting Dkt. 31, at 7).

8      Second, the Surreply requests that the Court strike Exhibit B from the Declaration of

9  Tamara K. Nelson ("Ms. Nelson") (Dkt. 31). Dkt. 33, at 2–3. Plaintiffs argue that Ms. Nelson

10  lacked personal knowledge regarding a statement concerning what documents Plaintiffs signed

11  or received in 2016. Plaintiffs contend that, upon information and belief, Ms. Nelson was not

12  retained by Defendant until 2019, and CMH failed to offer a declaration supporting the

13  allegations.

14      The portions of the record that Plaintiffs requests to strike were not vital to the Court's

15  decision here, and the Court need not consider Plaintiffs' requests to strike at this time.

16  Therefore, to the extent that Plaintiffs move to strike (Dkt. 33), that motion should be denied

17  without prejudice. Additionally, CMH's Motion to Strike Surreply and Motion for Leave to

18  Supplement Reply on Defendant's Motion to Compel Arbitration/Motion to Amend (Dkt. 34)

19  was not filed in accordance with LCR 7(g)(4), and the Court need not consider it.

20          **III.  <u>ORDER</u>**

21      Therefore, it is hereby **ORDERED** that:

22      • Defendant CMH Homes, Inc.'s Motion to Alter (Dkt. 24) is **GRANTED, IN**

23        **PART, and DENIED, IN PART,** as follows:

24

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION - 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

- o Defendant CMH Homes, Inc.'s Motion to Alter (Dkt. 24) is granted as follows:
  - ▪ The Order on Defendant's Motion to Compel Arbitration and Stay Proceedings (Dkt. 21) is **VACATED and REPLACED** with this order.
    - Defendant CMH Homes, Inc.'s Motion to Compel Arbitration (Dkt. 14) is **DENIED.**
- o Defendant CMH Homes, Inc.'s Motion to Alter (Dkt. 24) is otherwise **DENIED.**
- To the extent that Plaintiffs move to strike (Dkt. 33), that motion is **DENIED WITHOUT PREJUDICE.**
- CMH's Motion to Strike Surreply and Motion for Leave to Supplement Reply on Defendant's Motion to Compel Arbitration/Motion to Amend (Dkt. 34) was not filed in accordance with LCR 7(g)(4), and the Court need not consider it.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 16th day of September, 2019.

ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANT'S MOTION TO ALTER, VACATE OR AMEND PURSUANT TO FRCP 59(E) OR ALTERNATIVE MOTION PURSUANT TO CR 60(B), AND REPLACEMENT ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION - 18